# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

IN RE                                    §
                                         §
GENE MICHAEL MONTEAGUDO,                  §
                                         §
*Debtor.*                                §          CIVIL ACTION H-12-2481
                                         §
JASON D. ANDERSON AND                    §
WEINSTEIN & RILEY, P.S.,                  §
                                         §
    *Appellants.*                        §

## ORDER

Pending before the court is appellant Jason D. Anderson's brief (Dkt. 5), in which he appeals a memorandum opinion and order issued by United States Bankruptcy Judge Marvin Isgur imposing certain requirements on Anderson and his previous law firm (the "Rule 9 Order"). Since Judge Isgur acted *sua sponte*, no opposition to the brief has been filed. The court has considered Anderson's brief, other documents in the record, including Anderson's supplemental brief (Dkt. 11), and the applicable law, and finds that the Rule 9 Order should be AFFIRMED.

## I. BACKGROUND

At the time the events leading to the instant appeal occurred, Anderson worked for Weinstein & Riley, P.S. ("Weinstein"), a law firm based in Seattle, Washington. Dkt. 5. Weinstein represents Discover Bank, which issues the Discover Card, in adversary proceedings in bankruptcies based on section 523 of the Bankruptcy Code. *Id.* Anderson was based in Washington state, but he is licensed in Texas, so he was local counsel when Discover Bank initiated a proceeding in the underlying case, *In re Monteagudo*, Case No. 12-30554, Adversary No. 12-03146, in the Southern District of Texas. *Id.* In the adversary complaint, which was less than two pages long in substance, Anderson asserted

that the debtor obtained credit from Discover Bank under false pretenses, false representations, and/or actual fraud, and that Discover Bank suffered damages in the amount of $6,000.00. Dkt. 3, Ex. 2. Because the complaint asserted fraud, Discover Bank was required to "state with particularity the circumstances constituting fraud or mistake" under Federal Rule of Civil Procedure 9(b), which is made applicable to bankruptcy adversary proceedings through Federal Rule of Bankruptcy Procedure 7009. Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. The original complaint did not meet this standard.

This was not the first time Anderson had filed complaints for Discover Bank in section 523 cases that did not comply with Rule 9(b) in the Southern District of Texas, and it was not the first time he had done so in front of Judge Isgur. Anderson represented Discover Bank before Judge Isgur in *In re Fuentes*, 474 B.R. 497 (S.D. Tex. July 13, 2012). In *Fuentes*, Judge Isgur found that the complaint was "void of factual support" for allegations that the debtor had accumulated debt while she had no ability or intent to repay. *Id.* at 499. In the opinion Judge Isgur issued with regard to Discover Bank's motion for reconsideration of his order denying their motion for default, Judge Isgur noted that he was disappointed in counsel's professionalism, as, when he was questioned counsel (Anderson) about why the complaint did not comply with Rule 7009, counsel replied that "it was his policy to satisfy Rule 7009's requirement only when a responding defendant raised an objection." *Id.* at 502. Judge Isgur noted that this "practice does *not* satisfy counsel's duties under the Federal Rules," as counsel is obligated to make a good faith effort to comply with the rules when he files his complaint. *Id.*

In the instant case, Judge Isgur issued an order to show cause, which noted that Discover Bank had acknowledged that its complaint did not meet the Rule 9(b) standards, applicable to the adversary proceeding through Federal Rule of Bankruptcy Procedure 7009, and that the court had

2

raised the same issue "in other adversary proceedings involving Discover Bank seeking an exception

to discharge under § 523 for credit card debt." Dkt. 3, Ex. 3 (Bankr. Dkt. 23).[1]  The order stated:

> Discover Bank and its counsel are ordered to show cause why
> Discover Bank and its counsel should not be compelled to comply
> with Rule 9(b) in the filing of future adversary proceedings in
> the United States Bankruptcy Court for the Southern District of Texas.

*Id.*  The order additionally required Anderson to be present along with "a corporate representative

who has the full authority to direct Discover Bank's present and future counsel regarding the

contents of complaints seeking exceptions to discharge in the United States Bankruptcy Court for

the Southern District of Texas." *Id.*

On the date of the show cause hearing, Anderson and counsel for the debtor appeared.  Dkt.

3, Ex. 5 (Bankr. Dkt. 42).  Judge Isgur asked Anderson where his client representative was, and

Anderson replied that he did not have a client representative present.  *Id.*  Anderson noted that in

reading the order, he determined that *he* was the person "who has full authority to direct Discover

Bank's present and future counsel regarding the contents of complaints."  *Id.*  The judge indicated

that the ordered specified that the *client* must be present.  The judge quoted the order to show cause,

which states that Anderson must be there and, "in addition, a corporate representative . . . must be

present." *Id.*  The judge determined that Anderson was being disingenuous about misunderstanding

the order and continued the hearing from day to day until the corporate representatives appeared.

*Id.*  Anderson named specific corporate representatives who directed his work, and the judge ordered

Anderson to appear at 9:00 a.m. and 1:30 p.m. every day until these corporate representatives

appeared.  *Id.*  Anderson expressed concern about whether the court could order the individuals to

appear if they were not listed as counsel, but the judge stated that he was ordering the client

---

[1]  The Bankruptcy Docket numbers are in reference to Adversary Proceeding 12-3146.

representatives to appear, as he was holding a show cause hearing *about the client*. *Id.* The court

noted that if Discover Bank felt the court did not have jurisdiction over the named individuals, it was

free to send its general counsel instead. *Id.* The court additionally noted that if Anderson disobeyed

the order and failed to appear at 9:00 and 1:30 each day until his client appeared, Anderson would

be arrested. *Id.*

On July 27, 2012, Anderson appeared at 9:00 a.m. as directed. Dkt. 3, Ex. 8 (Bankr.

Dkt. 50). He restated his objection to the court's requirement that the individuals he had specifically

named the day before appear, arguing that the court did not have jurisdiction over them. *Id.* The

judge noted that he probably would not have the two people named in the order arrested, but he

could hold Discover Bank in contempt if the people did not appear. *Id.* Anderson then noted that

he bears responsibility for the Rule 9 issues and the filing of the complaint, and that his client did

not bear responsibility. *Id.* The judge noted that he believed that Anderson had the intellectual

capacity to understand that the court required a corporate representative to appear the day before and

that he had therefore determined that Anderson was simply being untruthful when he stated that he

did not understand the order. *Id.* The judge stated that he was seriously considering whether he

"should suspend [Anderson] from appearing as an attorney before [him] on behalf of any clients."

*Id.* He advised Anderson that he "need not respond to that right now," but wanted him to understand

the gravity of the situation. *Id.* The court then continued the hearing until 1:30 since the corporate

representatives were not there. *Id.*

At the 1:30 hearing, Anderson advised that he would be able to produce the Discover Bank

representative with the most knowledge about section 523 complaints on Monday morning. Dkt.

3, Ex. 6 (Bankr. Dkt. 43). On Monday morning, July 30, 2012, Anderson and Steven Holmes, on

behalf of Discover Bank, appeared for the hearing. Dkt. 3, Ex. 7 (Bankr. Dkt. 44). Additionally, the

Discover Bank representative with knowledge about section 523 complaints—Marc Taylor—appeared, as well as Discover Bank's assistant general counsel, Jim Swift. *Id.* Anderson opened by objecting to the court's subject-matter jurisdiction, as the underlying case had settled. *Id.* The court denied the objection, noting that the closure of the administrative matter does not affect its subject-matter jurisdiction. *Id.* The court then noted that Judge Steen had issued an order in 2008 in which he noted that Discover Bank was not complying with Rule 9 of the Federal Rules of Civil Procedure, and that in

> several cases in which Mr. Anderson has appeared representing Discover Bank and other credit card companies, we've repeatedly raised the issue of why aren't we complying with Rule 9?  And the most disheartening answer that we've received is we don't comply with Rule 9 until somebody makes us do it.  That's my words, not his.  But that was the answer of, essentially, we'll file bare-bone[s] Complaints and then if a court says we got to comply with Rule 9 we will.

*Id.* The court then noted that in Judge Steen's 2008 case, the complaint was essentially identical to the pleading filed in the *Monteagudo* case, albeit the blanks were filled in differently. *Id.* Judge Steen determined that the pleading did not comply with Rule 9. *Id.* Judge Isgur advised Anderson's clients that he wanted to know "why we can't comply with Rule 9"—whether it was the lawyers or Discover Bank's influence over the lawyers that was causing this problem continue. *Id.* Holmes assured the court that Discover Bank would comply with the court's view of Rule 9 "on a go-forward basis." *Id.*

Anderson called two witnesses, and Anderson, Holmes, and the judge questioned the witnesses.  The first witness was Marc Taylor, a manager in Discover Bank's National Recovery Center. *Id.* Taylor testified that Discover Bank gives outside counsel full discretion with regard to filing section 523 complaints. *Id.* The next witness was James Swift, vice president and assistant

general counsel for Discover Financial Services.  *Id.*  Swift testified that he would be involved in the implementation of any modifications to guidelines for outside counsel.  *Id.*  He stated that Discover Bank's interest was "to ensure that all of [its] pleadings comply with Rule 9 and that whatever the current local judge requires, [it] expect[s] [its] Counsel to comply with that."  *Id.*  Swift testified that he was prepared to ensure that Discover Bank provided a more detailed complaint, that "it's a very simple thing to put the who's, what's, where's, why's and how's into a Complaint, and that will be done," and that he had been unaware that it had not been done in this case.  *Id.*

After the Discover Bank representatives testified, Judge Isgur called Anderson to the stand. *Id.*  Judge Isgur noted that he was questioning Anderson as to *Anderson*'s individual part of the show cause order, not Discover Bank's.  *Id.*  The court noted that Anderson had not complied with Rule 9 in Judge Steen's case and had not complied with it in a similar case Anderson had had with Judge Isgur in the Valley, and he asked Anderson what he was "doing these days to comply with Rule 9." *Id.*  Anderson noted that he would be "particularly mindful of pleading as many facts as possible," but that it was difficult to do so in credit card cases because the fraud was concealed.  *Id.*

Anderson was then given the opportunity to testify in narrative form.  *Id.*  He noted that to the extent the court interpreted his previous comments as indicating that it was his position that either he or his clients do not comply with Rule 9 until someone tells him to, that was "the result of [his] own inarticulateness."  *Id.*  Anderson noted that it was not his "position that [he] file something and leave it up to chance and see what happens."  *Id.*  He said that he takes his "job particularly seriously" with regard to what he files, that he was a former law clerk and had been practicing six years, and that he was "happy to do the work necessary to follow the guidance provided by [the] Court."  *Id.*

After Anderson stepped down, Judge Isgur showed the original adversarial complaint in *Monteagudo* to Swift and noted that Anderson believed the complaint met Rule 9. Anderson objected, stating that he did not testify that the pleading met Rule 9. *Id.* The court disagreed, noting that Anderson had testified that "everything [he had] ever filed [he] believe[d] complie[d] with Rule 9 if it was supposed to." *Id.* Judge Isgur noted that he had seen Anderson file that "standard form" "dozens of times." *Id.*

Judge Isgur issued a Memorandum Opinion and Order ("Rule 9 Order") on August 1, 2012. In that order, he ruled that Discover Bank's attorneys had "repeatedly violated the Federal Rules of Bankruptcy Procedure" and that, while "[n]o relief should be granted against Discover Bank," "Discover Bank's counsel should be ordered to comply with Rule 7009 of the Federal Rules of Bankruptcy Procedure." Dkt. 3, Ex. 4 (Bankr. Dkt. 38). The order covered the history of this case and noted that it did not find Anderson's testimony credible. *Id.* The court concluded that it "was left with no credible evidence that either Anderson or his law firm would strive to comply with Rule 7009 in their future pleadings." *Id.* As such, the court ordered that Anderson and his firm "must comply with Rule 7009 of the Federal Rules of Bankruptcy Procedure" in all future § 523(a)(2) complaints filed in the United States Bankruptcy Court for the Southern District of Texas, that a copy of the Rule 9 Order "must be filed in every adversary proceeding filed by Anderson or Weinstein & Riley in this District" for a period of twelve months following the date of the Rule 9 Order, that a copy of the Rule 9 Order must be filed in a separate docket entry no later than 48 hours after the commencement of the adversary proceeding with a docket entry reading "Notice of Order Mandating Compliance with Rule 7009," and that the Rule 9 Order must be served on all parties to the proceeding on the same day that it is filed in ECF. *Id.* Additionally, the Rule 9 Order indicated

that Anderson had "failed in multiple duties to the Court," and that the court was taking "under advisement whether separate proceedings should be commenced against Mr. Anderson." *Id.*

Anderson and Weinstein filed a notice of appeal on August 14, 2012. Dkt. 1. Anderson filed his brief on October 19, 2012. Dkt. 5. Anderson subsequently resigned from Weinstein, and Weinstein determined it was in the firm's best interest to request dismissal of the appeal, which it did. Dkt. 6. The court dismissed Weinstein as a party to the appeal on October 25, 2012. Dkt. 7. On November 5, 2012, Anderson filed a motion to expedite the court's decision on appeal, noting that the Rule 9 Order "imposes unjust and unwarranted sanctions on Anderson and was entered without compliance with the due process protections to which Anderson is entitled." Dkt. 8. As such, Anderson requested expedited proceedings to help ameliorate the "harmful effects Anderson [had] already begun to suffer as a result of the [Rule 9 Order], and to prevent further unwarranted harm to Anderson's reputation, career, and livelihood."[2] *Id.* The court granted Anderson's motion to expedite and is considering his appeal on an expedited basis. Dkt. 9.

Anderson argues in his brief that the Rule 9 Order is, in reality, a disciplinary sanction, and that he was constitutionally entitled to notice and a meaningful opportunity to explain before such a sanction was imposed. Dkt. 5. Alternatively, he argues that the court should vacate the order as an abuse of discretion, as Judge Isgur could not impose the sanctions under his inherent powers, under Rule 11, or under his contempt powers. *Id.*

The court remanded the case to the Bankruptcy Judge for clarification as to the basis for his sanction. Dkt. 9. The Bankruptcy Judge provided a supplemental memorandum opinion that

---

[2] Anderson and Weinstein also filed a motion to reconsider, and the Bankruptcy Court granted the motion to reconsider but then reaffirmed its prior decision. *See* Dkt. 5 (discussing motion to reconsider); Bankr. Dkts. 47 (motion to reconsider), 57 (order reconsidering).

clarifies that he sanctioned Anderson in accordance with the Bankruptcy Court's inherent powers. Dkt. 10.  In the supplemental memorandum opinion, the bankruptcy court states that Anderson's litigation tactics, repeated in a number of cases, prompted the original show cause order, and Anderson's repeated and intentional failure to comply with his duties led the court to conclude that his conduct in filing "bare bones" complaints was in bad faith.  *Id.*  The court notes that it had repeatedly cautioned Anderson that his complaints did not comply with the Federal Rules of Bankruptcy Procedure and had even refused to sign a default judgment because the pleadings failed to meet Rule 9.[3]  *Id.*  During the hearing, the judge asked Anderson what steps he was taking to comply with Rule 9.  Dkt. 10 (citing July 20, 2012 transcript).  Anderson argued that his pleadings satisfied Rule 9.  *Id.*  Anderson then noted that he might plead his causes of action separately in the future so as to help the court's analysis.  *Id.*  He, however, did not indicate that he had taken any steps to comply with Rule 9 since the time Judge Steen and Judge Isgur had ruled that his previous "bare bones" complaints did not satisfy the standard.  *Id.*  Judge Isgur therefore concluded that "Anderson's repeated filing of § 523(a)(2) complaints in this District that failed to follow the Federal Rules of Bankruptcy Procedure was done in bad faith and for the purpose of imposing additional litigation costs."[4]  *Id.*

---

[3]  In that case, rather than amending the pleadings, Anderson argued that the court was required to enter a default judgment.  *Id.* (citing *In re Fuentes*, 474 B.R. 497 (S.D. Tex. 2012)).  And regarding his compliance with Rule 9, Anderson stated that it was his practice to satisfy the rule only when a defendant raises an objection.  *In re Fuentes*, 474 B.R. 497, 503 (S.D. Tex. 2012).

[4]  With regard to litigation costs, Judge Isgur expressed concern that Anderson files numerous § 523(a)(2) cases in the Southern District of Texas seeking relatively small amounts of money, and if defendants are required to file motions requiring Anderson to state the claim with particularity, it drives up their litigation costs.  *See id.*  Since the amounts demanded are small, defendants may chose to actually settle out claims, even though they are not stated with particularity, rather than increase their costs with additional motion practice.  *Id.*

Anderson has filed a supplemental brief, in which he argues that the Bankruptcy Judge's supplemental memorandum goes beyond the scope of the court's remand order and that it does not cure the deficiencies with the original order, namely that there is not an express finding of bad faith, that Anderson did not receive sufficient notice that he was potentially going to be punished before the show cause hearing, and that the sanction is too severe.  Dkt. 11.  Anderson alternatively asks the court to remand the case back to a different bankruptcy judge.  *Id.*

## II. ANALYSIS

### A.    Bad Faith

Anderson first argues that if Judge Isgur entered the Rule 9 Order under his inherent powers, it was an abuse of discretion because there was no finding of bad faith on Anderson's part.  Dkt. 5.  A bankruptcy court, "acting under its inherent authority, may impose sanctions against litigants and lawyers appearing before the court so long as the court makes a specific finding that they engaged in bad faith conduct."  *In re Yorkshire, LLC*, 540 F.3d 328, 332 (5th Cir. 2008).

The court finds that the Rule 9 order was appropriately issued after the Bankruptcy Judge determined that Anderson was acting in bad faith by continuing to file "bare bones" § 523(a)(2) complaints despite the court's prior warnings that these complaints must comply with Rule 7009 of the Federal Rules of Bankruptcy Procedure.  Anderson complains that the original memorandum opinion and order does not expressly use the term "bad faith."  Dkt. 5.  However, it is clear from the original opinion and order that Judge Isgur believed Anderson was acting in bad faith.  The opinion discusses Anderson's "prior untruthful statements to the Court," his "lack of candor and his untruthfulness," and how Anderson had "ignored the Court's admonitions."  Dkt. 3, Ex. 4 (Bankr. Dkt. 38).  Additionally, Judge Isgur expressly notes in his supplemental memorandum opinion that he believed Anderson was acting in bad faith.  Dkt. 10.

10

**B.      Notice**

Second, Anderson argues that he was denied his constitutional right to due process because he did not receive proper notice. Dkt. 11. Anderson claims that the Rule 9 Order is punitive in nature and that the order to show cause did not sufficiently apprise him that he would potentially be subjected to the "public sanction order" which "effectively bar[s] him from filing adversary proceedings in the Southern District of Texas for one year" and is "a blistering and devastating critique of his professionalism and honesty." Dkt. 11. Anderson characterizes the sanction as "inherently disciplinary" and "quasi-criminal in nature." *Id.*

First, the court disagrees with Anderson's contention that the sanction here was quasi-criminal in nature. The cases Anderson cites in support of his contention that the sanction is "quasi-criminal" involve actual disbarment. *See In re Ruffalo*, 390 U.S. 544, 551, 88 S. Ct. 1222 (1968) (noting that disbarment proceedings are quasi-criminal in nature and that the "charge must be known before the proceedings commence"); *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 229 (5th Cir. 1998) (involving an order disbarring an attorney from practicing in the Northern District of Texas until she paid a monetary sanction). In cases in which an attorney may be disbarred, he or she is "entitled to notice of the charges and an opportunity to explain or defend (except for extreme misconduct occurring in open court, in the presence of the judge)." *Dailey*, 141 F.3d at 230. Here, Anderson was not disbarred. Rather, the Rule 9 Order imposes additional requirements when Anderson files adversary proceedings in the Southern District of Texas. Thus, detailed notice of the "charges" was not necessary.

Regardless, Anderson was given sufficient notice that his conduct with regard to complying with Rule 9 was being called into question. The show cause order advised that Anderson was to show cause why he should not be "compelled" to comply with Rule 9. Dkt. 3, Ex. 3 (Bankr. Dkt.

11

23).  Since the Federal Rules of Civil Procedure and the Bankruptcy Rules already *require* litigants to comply with the rule, obviously the use of the term "compel" in the show cause order meant something more than just being kindly asked to please follow the rules.

Anderson complains that "the show cause order was so very limited [that] it did not give Anderson any opportunity to prepare for the true focus of [the] hearing."  Dkt. 11.  The "true focus of the hearing" was Anderson's, and his client's, compliance with Rule 9 in adversary proceedings in the Bankruptcy Courts of the Southern District of Texas, which is exactly what the order to show cause stated, and exactly what was addressed in the Rule 9 Order.  The issuance of the show cause order reflects an obvious concern on the part of the Bankruptcy Court with regard to Anderson's conduct in complying with Rule 9.  Furthermore, when Anderson showed up to the hearing without his client, even though the order clearly required that he bring his client, and the court ordered Anderson to appear every day at 9:00 a.m. and 1:00 a.m. every day until he brought his client or risk arrest, the seriousness of the matter should have been all the more apparent.  If Anderson was not prepared to address the Bankruptcy Court's concerns with regard to his conduct with regard to compliance with Rule 9, it is through no fault of the Bankruptcy Court.

## C.    Scope of Order

Anderson points out that when a court issues sanctions under its inherent powers, it must choose "the least severe sanction necessary" to remedy the situation.  Dkt. 5, 11.  Anderson claims that the Rule 9 Order has caused great hardship in his personal and professional life and that a less severe sanction would have sufficed to force him to comply with Rule 9.  Dkt. 11.  The court finds, however, that the Rule 9 Order is appropriately limited to address the problem.  Judge Isgur notes that he could not trust Anderson to comply with an order to requiring Rule 7009 compliance because Anderson continued to assert that he had complied with Rule 7009 when in fact he had not.  Dkt. 10.

12

Thus, he fashioned a solution that would assure that other judges in the Southern District of Texas would be aware of the situation.[5]  *Id.*  The Rule 9 Order covers only § 523(a)(2) filings in the Southern District of Texas and covers a time period of only one year.  *See* Dkt. 3, Ex. 4 (Bankr. Dkt. 38).  Requiring Anderson to file the Rule 9 Order in these cases will force him to ensure that the complaint is in compliance with the Rules before filing, which he should have been doing in the first place.  Anderson may not simply refuse to comply with the rules until a defendant makes him do so by engaging in expensive motion practice, and he most certainly may not refuse to follow the rules after being warned by *more than one* judge in the Southern District of Texas that the bare bones § 523(a)(2)(A) complaints were inadequate.  In the Fifth Circuit, plaintiffs asserting § 523(a)(2)(A) actions, like the claim filed in the underlying action here, must prove common-law fraud.  *In re Mercer*, 246 F.3d 391, 401-02 (5th Cir. 2001).  Thus, the complaints must comport with Federal Rule of Bankruptcy Procedure 7009 and Federal Rule of Civil Procedure 9(b).  *See In re Fuentes*, 474 B.R. at 500; *see also In re Wald*, No. 11-53644, 2012 WL 2564367, at *7 (W.D. Tex. July 2, 2012) ("To adequately plead a section 523(a)(2)(A) cause of action, the plaintiff must plead with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.").

The Rule 9 Order ensures, given Anderson's past non-compliance, that he will comply with the rule as required.  Judge Isgur did not find Anderson's promises that he took his Rule 9 obligations seriously to be credible, particularly given Judge Isgur's history with Anderson and Anderson's continued practice of using the same bare-bones pleadings, and the judge therefore found it necessary to fashion a remedy that would, as he noted in his order to show cause, compel Anderson to comply with Rule 9(b) in the future.  *See* Dkt. 3, Ex. 3 (Bankr. Dkt. 23) (ordering Anderson to

---

[5]  Judge Isgur clearly noted that he did not find Anderson credible in both his original and supplemental orders.  Dkt. 3.

"show cause why [he] should not be compelled to comply with Rule 9(b) in the filing of future adversary proceedings in the United States Bankruptcy Court for the Southern District of Texas"). The court defers to the bankruptcy judge's credibility determinations. *See* Fed. R. Civ. P. 52(a)(6) (noting that the "reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility"); Fed. R. Bankr. P. 8013 (stating that "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses"). Because Judge Isgur found Anderson's promises of future compliance lacked credibility, he fashioned an appropriate remedy to ensure that Anderson would comply with the Rule in the future. The Rule 9 Order and Supplemental Memorandum Opinion are AFFIRMED in all respects.

**D.     Mandate Rule**

Anderson argues in his supplemental brief that Judge Isgur exceeded the scope of remand in his supplemental memorandum opinion by expanding upon his reasoning for issuing the Rule 9 Order under his inherent powers. Dkt. 11. Under the mandate rule, a "lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002). The court remanded the case to the Bankruptcy Court "for clarification of the legal basis for the Rule 9 Order." Dkt. 9. Anderson complains that the Bankruptcy Court issued an additional seven pages of factual findings and legal conclusions. Dkt. 11. Most of the supplemental memorandum opinion, with the exception of the express finding of bad faith, points to facts that are already in the record. *See* Dkt. 10.[6] And with regard to the *express* finding of bad faith contained in the supplemental memorandum opinion, as the court noted above, the original order clearly indicated that the court

---

[6] For example, approximately four pages are quotes from a transcript that is in the appellate record.

felt Anderson was acting in bad faith even if the term was not expressly used.  *See* Dkt. 3, Ex. 4 (Bankr. Dkt. 38).  Moreover, the court asked Judge Isgur for *clarification* of the legal basis for the Rule 9 Order, which is exactly what the supplemental memorandum opinion and express finding of bad faith accomplished.  Thus, the court does not believe that the Bankruptcy Court exceeded the scope of the mandate.

**E.      Remanding to the Bankruptcy Court**

Finally, Anderson requests that if the court remands the case to the Bankruptcy Court, it remand to a judge other than Judge Isgur.  Dkt. 11.  Anderson argues that because the debtor did not participate in the sanctions order, Anderson has no traditional adversary in this proceeding, and Judge Isgur's supplemental memorandum opinion "in practical effect" made Judge Isgur "Anderson's opponent in this matter."  *Id.*  Judge Isgur, however, was simply fulfilling his judicial duties by issuing an order clarifying the Rule 9 Order, as requested by this court.[7]  The court finds no cause to reassign the case to another judge.  Thus, Anderson's alternative request that the court reassign the case to a different judge on remand is DENIED.

---

[7] The most interesting aspect of this request is that the underlying adversary case has settled, and a final judgment has been entered in stipulation by the parties.  *See* Bankr. Dkt. 32.  Thus, the case is in all practical aspects, over.

### III. CONCLUSION

The Bankruptcy Court's memorandum opinion and order (Dkt. 3, Ex. 4) and its supplemental memorandum opinion (Dkt. 10) are AFFIRMED.  Anderson's alternative request that the court reassign this case to a different bankruptcy judge is DENIED.

Signed at Houston, Texas on January 7, 2013.

_____
Gray H. Miller
United States District Judge